UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Maria Altagracia Vargas Maldonado,<br><br>                                 Plaintiff,<br><br>-against-<br><br>Commissioner of Social Security,<br><br>                                 Defendant. | 23-cv-03532 (SDA)<br><br>**OPINION AND ORDER** |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Maria Altagracia Vargas Maldonado ("Vargas Maldonado" or "Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Compl., ECF No. 1.) Presently before the Court are Plaintiff's motion for judgment on the pleadings and the Commissioner's brief in opposition.[1] (Pl.'s Mot., ECF No. 14; Comm'r Br., ECF No. 17.) For the reasons set forth below, Plaintiff's motion is DENIED and the decision of the Commissioner is AFFIRMED.

**BACKGROUND**

**I.      Procedural Background**

On June 15, 2018, Vargas Maldonado filed applications for DIB and SSI with an alleged disability onset date of January 1, 2017. (Administrative R., ECF No. 13 ("R."), 92, 106, 119-20.)

---

[1] The current Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Standing Order No. 22-MC-00329 (LTS) establish simplified procedures and provide that the parties' submissions presenting these actions for decision will be styled as briefs. Regardless of how Plaintiff styled her motion, the Court's review of the Commissioner's decision is the same. *See* 42 U.S.C. § 405(g).

On September 20, 2018, the Social Security Administration ("SSA") denied her application. (R. 157-64.) Thereafter, Vargas Maldonado filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. 165-66.) On April 2, 2020, a hearing was held before ALJ Jason Mastrangelo. (R. 47-56.) Vargas Maldonado did not appear for the hearing, but was represented by attorney William Morrison. (R. 49.) On July 9, 2020, a second hearing was held before ALJ Mastrangelo, at which Vargas Maldonado appeared, along with attorney Christopher Latham. (R. 57-70.)

In a decision dated August 10, 2020, ALJ Mastrangelo found Vargas Maldonado not disabled. (R. 127-41.) On August 21, 2020, Vargas Maldonado requested review of the ALJ decision from the Appeals Council. (R. 363-65.) The Appeals Council granted her request on September 7, 2021 and remanded the case to an ALJ. (R. 148-52.)

On December 6, 2021, an administrative hearing was held, via telephone, before ALJ Sharda Singh. (R. 71-90.) Vargas Maldonado was represented at the hearing by attorney J. Anklowitz. (R. 74.) In a decision dated February 10, 2022, ALJ Singh found Vargas Maldonado disabled beginning on December 26, 2019, but not disabled prior to that date.[2] (R. 19-38.) On March 24, 2022, Vargas Maldonado requested review of the ALJ decision from the Appeals Council. (R. 6, 10-12.) The Appeals Council denied her request for review on February 22, 2023, making ALJ Singh's decision the Commissioner's final decision. (R. 1-6.) This action followed.

---

[2] To qualify for DIB, a claimant must be both disabled and insured for benefits. 42 U.S.C. § 423(a)(1)(A) & (C); 20 C.F.R. §§ 404.101, 404.120 & 404.315(a). The last date a person meets these requirements is commonly referred to as the date last insured. Plaintiff's date last insured was June 30, 2019. (R. 91.) Thus, ALJ Singh denied Plaintiff's application for DIB. (R. 38.)

2

II. **Non-Medical Evidence**

Born on March 20, 1957, Vargas Maldonado was 59 years old on the alleged onset date and 64 years old at the time of ALJ Singh's decision. (*See* R. 119.) Vargas Maldonado has at least a high school education and past work as a secretary/data entry clerk. (R. 53, 591.)

On August 3, 2018, Vargas Maldonado completed a written function report. (R. 604-14.) She reported that she did laundry and ironed when needed and shopped for food. (R. 606-07.) Her daily activities included walking, shopping and going to church. (R. 613.) Vargas Maldonado reported that she did not lift anything so her back did not hurt and she never reached or used her hands. (R. 609.) She reported that she felt pain in her back, hips and neck two to three times a week and when she had pain she needed to stay in bed. (R. 613.)

III. **Medical Evidence Before the ALJ**[3]

A. **Treatment Records**

On October 31, 2017, Vargas Maldonado saw Andre Strizhak, M.D., at NYU Langone Medical Center for an office visit. (R. 773-77.) Vargas Maldonado presented with numbness and reported a long history of numbness, tingling and pain in her hands, especially at night. (*Id*.) On examination, Dr. Strizhak found wrist flexion and extension and hand grip were 5/5 bilaterally; fine finger movement was normal with no tremor and a sensory examination was normal. (R. 775.) Dr. Strizhak assessed hand paresthesia – likely carpal tunnel syndrome and recommended

---

[3] Because the ALJ found Plaintiff disabled as of December 26, 2019 (R. 38), the Court limits its discussion of the medical evidence to prior to December 26, 2019. (*See* Pl.'s Mem. at 5 n.1; Comm'r Br. at 2.) Moreover, because Plaintiff's argument pertains to the ALJ's assessment of her hand limitations, the Court focuses on the medical evidence relevant to those impairments.

3

EMG [4] and moderate wrist splint at night and to follow up in two weeks [5] (R. 776.) An electrodiagnostic study conducted the same day revealed evidence of a moderate bilateral sensorimotor demyelinating median neuropathy at the wrist, which was consistent with the diagnosis of carpal tunnel syndrome. (R. 986-91.)

On November 3, 2017, Vargas Maldonado saw Joseph Ferrara, M.D., for a follow-up visit. [6] (R. 939-40.) Vargas Maldonado reported that she went to a neurologist who advised her that she had carpal tunnel syndrome and suggested a workup for arthritis. (R. 939.) Dr. Ferrara added pain in the right and left wrists to the lists of assessments. (*Compare* R. 942 *with* R. 940.) For his plan, Dr. Ferrara noted that Vargas Maldonado had been diagnosed with bilateral carpal tunnel syndrome by nerve study with a recommendation to use a wrist splint for two weeks and advised her to follow up with orthopedics. (R. 940.) Dr. Ferrara repeated this note during a follow-up visit on April 10, 2018. (R. 936-38.) During that visit, he also added an assessment of other dorsalgia, or back pain, and noted that an anti-nuclear antibody ("ANA") test was positive and to re-check it.[7] (R. 937.) The following week, Dr. Ferrara saw Vargas Maldonado to review her lab results, and referred her to rheumatology for evaluation given her dorsalgia, Raynaud's phenomenon [8] and a

---

[4] EMG, or electromyography, "is a diagnostic procedure to assess the health of muscles and the nerve cells that control them (motor neurons)." *Capezza v. O'Malley*, No. 23-CV-01813 (SDA), 2024 WL 642961, at *2 n.10 (S.D.N.Y. Feb. 15, 2024) (citing Electromyography ("EMG"), https://perma.cc/VED8-TRAV).

[5] There are no additional records from Dr. Strizhak in the Administrative Record.

[6] Vargas Maldonado treated with Dr. Ferrara between July 26, 2017 and at least August 1, 2019. (R. 929-47, 953-59, 979-80.)

[7] "A positive ANA test signifies an autoimmune reaction, which could indicate lupus, rheumatoid arthritis or scleroderma." *Nieves v. Comm'r of Soc. Sec.*, No. 23-CV-00005 (JGLC) (BCM), 2024 WL 992197, at *2 n.2 (S.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024).

[8] "Raynaud's phenomenon is a condition that causes the blood vessels in the extremities to narrow, restricting blood flow[,]" usually to the fingers or toes and usually from "from exposure to cold or emotional stress." Raynaud's Phenomenon, https://perma.cc/X6ZT-4RLJ.

4

positive ANA test. (R. 933-34.) Dr. Ferrara's note regarding carpal tunnel syndrome remained the same. (R. 934.) Later notes from Dr. Ferrara from follow-up appointments on September 21, 2018, October 9, 2018 and August 1, 2019 repeated the same note regarding carpal tunnel syndrome and also indicated that Vargas Maldonado did not keep her appointment with rheumatology.[9] (R. 930-31, 955, 959, 979-80.)

### B. August 7, 2018 Internal Medicine Consultative Examination – Allen Meisel, M.D.

On August 7, 2018, Vargas Maldonado saw Dr. Meisel for an internal medicine consultative examination. (R. 785-88.) Dr. Meisel noted that Vargas Maldonado had experienced lumbar back pain for many years, which worsened in September 2017, and also had cervical back pain. (R. 785.) She had not undergone an MRI or x-ray of the cervical spine. (*Id*.) Her cervical back pain radiated to her shoulders and both arms and she had intermittent numbness of both hands and fingers. (*Id*.) Dr. Meisel further noted that Vargas Maldonado underwent an EMG in October 2017 that showed bilateral radial and median nerve neuropathy suggestive of carpal tunnel syndrome and that she was given cock-up splints which she wore at night. (*Id*.) She also had vertigo and hypercholesterolemia for many years. (*Id*.) In terms of activities of daily living, Dr. Meisel noted that Vargas Maldonado was able to do cooking, cleaning, laundry and shopping and was able to shower and dress herself. (R. 786.)

---

[9] A January 22, 2020 note from an office visit at Crystal Run Healthcare references Vargas Maldonado's two-year history of a positive ANA test and that she never pursued a rheumatology referral. (R. 1022.) The provider also wrote that Vargas Maldonado "now notes [right] wrist swelling and pain as well as [bilateral] knee and back pain" and was scheduled for a rheumatology consult the following month. (*Id*.) Plaintiff later was diagnosed with systemic scleroderma and inflammatory arthritis. (*See* R. 1299; *see also* R. 83 (Plaintiff's testimony).)

On physical examination, Dr. Meisel found, *inter alia*, that Vargas Maldonado had a negative Tinel's and negative Phalen's signs bilaterally;[10] full range of motion of the shoulders, elbows, forearms and wrists bilaterally; her joints were stable and nontender; and there was no redness, heat, swelling or effusion. (R. 787.) A neurologic examination revealed no sensory deficits and 5/5 strength in the upper and lower extremities. (*Id*.) For fine motor activity of hands, Dr. Meisel noted that Vargas Maldonado's hand and finger dexterity were intact and she had 5/5 grip strength bilaterally. (*Id*.) Dr. Meisel opined that, because of her vertigo, Vargas Maldonado should avoid operating a vehicle and heavy machinery and that she had marked limitations of heaving lifting and carrying, climbing ladders and scaffolds and being exposed to unprotected heights. (R. 788.)

### C.   August 16, 2018 State Agency Consultant – A. Vinluan, M.D.

Dr. A. Vinluan issued a functional assessment on August 16, 2018 as part of the review of Vargas Maldonado's claim at the initial level. (R. 95-96, 99-101, 109-10, 113-15.) Dr. Vinluan assessed that Vargas Maldonado retained the ability to perform the activities and functions of light work with occasional postural changes and that did not expose her to unprotected heights or operating heavy machinery. (R. 96, 110.) In his residual function capacity ("RFC") assessment, Dr. Vinluan indicated that Vargas Maldonado had no manipulative limitations. (R. 100-10, 114.)

---

[10] "Tinel's maneuver is performed to produce carpal tunnel syndrome symptoms and is done by tapping the median nerve in the wrist." *Capezza*, 2024 WL 642961, at *2 n.12. "A positive Tinel's sign is an indication of the syndrome." *Id*. "Phalen's maneuver is done by pushing the back of the hands together for one minute[,] which "compresses the carpal tunnel to produce carpal tunnel syndrome symptoms." *Id*. at *2 n.11. "A positive Phalen's sign may be an indication of the presence of carpal tunnel syndrome." *Id*.

IV.     **The Administrative Hearings**

   A.     **Plaintiff's Testimony**

Plaintiff testified during the July 9, 2020 hearing. (R. 63-69.) Plaintiff testified that she tried to do some secretarial work in 2019, but stopped because her hands began to swell up and that is when she began to discover that she had rheumatoid arthritis. (R. 65.) Plaintiff testified that she had had carpal tunnel problems in the past, but her hands had not been swollen before. (*Id*.) She explained that she had experienced swelling in her hands and since September [2019], as well as pain, but the swelling was only in her wrists, not her fingers. (R. 65-66.) Plaintiff testified that she did not use any sort of medical device to help prevent swelling, but did take medications. (R. 66.) Plaintiff also testified that she could no longer type like she used to when she was working as a secretary because of the pain and swelling in her hands. (R. 68.) She testified that she could barely hold a pen and write a letter by hand. (*Id*.) Plaintiff also testified that, on a typical day, she wakes up with pain and does not want to get out of bed because of pain in her back and hands. (*Id*.) She shopped for groceries online, or had a friend go to the store for her, and her son and his wife helped with chores around her apartment. (R. 68-69.)

During the December 6, 2021 hearing, Plaintiff further testified regarding her carpal tunnel syndrome, hearing loss, vertigo and lung disease. (R. 77-85.) Plaintiff testified that she had not been treated for carpal tunnel syndrome because her doctors discovered that she had systemic scleroderma,[11] which was causing the problems in her hands. (R. 78-79.) She testified

---

[11] "Scleroderma is an autoimmune disease that causes inflammation and fibrosis (thickening) in the skin and other areas of the body." Overview of Scleroderma, https://perma.cc/CBF9-D9YP. "Localized scleroderma only affects the skin and the structures directly under the skin[,]" while "[s]ystemic scleroderma, also called systemic sclerosis, affects many systems in the body." *Id*.

7

that she did not have any strength in her hands and that she was taking medications, but they did not help. (R. 79.) As a result, Plaintiff testified that she had trouble picking up items, such as a cup of coffee or a cell phone, getting dressed and lifting things. (R. 80.)

### B. <u>Vocational Expert Testimony</u>

Vocational Expert ("VE") Quinton Boston testified at the first hearing on April 2, 2020. (R. 52-55.) Based on the information available in the record, VE Boston characterized Plaintiff's past work as data entry clerk secretary, DOT code 209.562-010, performed at the light exertional level. (R. 53.) During the December 6, 2021 hearing, Plaintiff stipulated to VE Boston's prior finding regarding the classification of her past work. (R. 85, 87.)

VE Rocco Meola testified at the December 6, 2021 hearing. (R. 86-89.) The ALJ asked VE Meola to assume a hypothetical person of Vargas Maldonado's age, education and work history who was limited to a light exertional level, could never climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs, balance, stop, kneel, crouch and crawl; was to avoid concentrated exposure to respiratory irritants, unprotected heights and hazards such as moving machinery; and was further limited to frequent fine and gross hand manipulations bilaterally and asked if such a hypothetical person could perform any past work. (R. 87-88.) VE Meola testified that such a person could perform Vargas Maldonado's past work as a data entry clerk. (R. 88.) However, if the hypothetical changed such that the individual was limited to occasional gross and fine hand manipulations, VE Meola testified that the individual could not perform Vargas Maldonado's past work. (*Id*.) Similarly if the individual was limited to a sedentary exertional level with the same additional limitations, VE Meola testified that the individual could not perform Vargas Maldonado's past work. (*Id*.)

**V.      ALJ Singh's Decision And Appeals Council Review**

Applying the Commissioner's five-step sequential evaluation, *see infra* Legal Standards Section II, the ALJ found at step one that Vargas Maldonado had not engaged in substantial gainful activity since the alleged onset date. (R. 22.)

At step two, the ALJ determined that Vargas Maldonado had the following severe impairments: degenerative change of the cervical spine, spondylosis in the lumbar spine, obesity, interstitial lung disease, reactive airway disease, scleroderma, rheumatoid arthritis and carpal tunnel syndrome. (R. 22.) The ALJ also found that Vargas Maldonado had non-severe impairments of breast cancer (status post right mastectomy), tinnitus and hearing loss, hypercholesterolemia, sleep apnea, lupus erythematosus, vertigo and anxiety and depressive disorders. (R. 23-25.) In finding the anxiety and depressive disorders non-severe, the ALJ considered the "paragraph B" criteria[12] and found that Vargas Maldonado had mild limitations in understanding, remembering or applying information; ability to concentrate, persist or maintain pace and ability adapt or manage herself; and no limitation in interacting with other. (R. 25-26.) Accordingly, the ALJ found that the paragraph B criteria were not satisfied.

At step three, the ALJ found that Vargas Maldonado did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27-28.) The ALJ specifically considered Listings 1.15, 2.07, 2.10, 3.02, 3.03, 11.14, 13.10 and 14.04. (R. 28.)

---

[12] The paragraph B criteria "represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. § 404, Subpt. P, App'x 1. They are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id*. To satisfy the paragraph B criteria, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *Id*.

9

The ALJ then assessed Vargas Maldonado's RFC and determined that, prior to December 26, 2019, she was able to perform light work, as defined in 20 CFR § 404.1567(b) and § 416.967(b),[13] except that she could perform work that did not require climbing ladders, ropes or scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch and crawl; could perform work without concentrated exposure to respiratory irritants; could perform work that avoided exposure to heights or hazards; and could perform work that required frequent fine and gross hand manipulations. (R. 28-34.) Beginning on December 26, 2019, the ALJ found that Vagas Maldonado had the RFC to perform only sedentary work, with the same additional restrictions. (R. 34-36.)

At step four, the ALJ found that, prior to December 26, 2019, Vargas Maldonado was able to perform her past relevant work as a data entry clerk. (R. 36.) However, the ALJ found that, beginning on December 26, 2019, Vargas Maldonado was unable to perform her past relevant work, which had been performed at the light level. (*Id*.) At step five, the ALJ considered Vargas Maldonado's age, education, work experience and RFC and concluded, that since December 26, 2019, there were no jobs existing in significant numbers in the national economy that she could perform. (R. 36-37.) Therefore, the ALJ found that Vargas Maldonado was not disabled prior to December 26, 2019, but became disabled on that, and continued to be disabled through the date of the ALJ's decision. (R. 37.)

---

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**LEGAL STANDARDS**

**I.      Standard Of Review**

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)) (additional citations omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009); *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). A court must set aside legally erroneous agency action unless "application of the correct legal principles to the record could lead only to the same conclusion," rendering the errors harmless. *Garcia v. Berryhill*, No. 17-CV-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018) (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)).

Absent legal error, the ALJ's disability determination may be set aside only if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). However, "[t]he substantial evidence standard is a very deferential standard of

review—even more so than the clearly erroneous standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder *would have to conclude otherwise*." *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), *as amended* (Apr. 30, 2019) (summary order) (emphasis in original) (cleaned up). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

## II. Determination Of Disability

A person is considered disabled for benefits purposes when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 [(the "Listings")] . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v) (internal citations omitted) (cleaned up).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* §§ 404.1520(e), 416.920(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof as to the first four steps. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (citation omitted). It is only after the claimant proves that she cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education and past relevant work experience. *Id.* at 50-51.

## DISCUSSION

Plaintiff argues that this action should be remanded because the ALJ's RFC assessment with respect to the period prior to December 26, 2019 is not supported by substantial evidence. (Pl.'s Mem., ECF No. 15, at 15-18.) Specifically, Plaintiff argues that the ALJ erred by failing to consider all of her severe impairments in determining her the RFC and that the ALJ did not adequately explain her conclusion that Plaintiff could perform work that required frequent fine and gross hand manipulations.[14] (*Id*. at 16-17.)

Contrary to Plaintiff's argument, a careful review of the ALJ's decision indicates that the ALJ considered all relevant evidence for each of Plaintiff's impairments, including her carpal tunnel syndrome, to formulate an RFC that was consistent with the record as a whole. (*See* R. 28-36.) Plaintiff points to the October 2017 treatment notes from Dr. Strizhak, her August 2018 function report, her July 2020 hearing testimony, and the November 2021 opinion of Dr.

---

[14] Fine and gross hand manipulations involve reaching, handling, and fingering. *See Cherry v. Comm'r of Soc. Sec.*, No. 17-CV-07999 (VEC), 2019 WL 1305961, at *7 (S.D.N.Y. Mar. 22, 2019), *aff'd*, 813 F. App'x 658 (2d Cir. 2020). "Examples of performing fine and gross movements include, but are not limited to, taking care of personal hygiene, sorting and handling papers or files, and placing files in a file cabinet at or above waist level." *Pope v. Kijakazi*, No. 22-CV-00274 (JCM), 2023 WL 6318780, at *12 (S.D.N.Y. Sept. 28, 2023).

Rosemary Simo as evidence suggesting greater limitations than those found by the ALJ.[15] (Pl.'s Mem. at 16.) However, the ALJ considered all of this evidence in reaching her RFC determination and reasonably determined that Plaintiff could perform work requiring frequent fine and gross hand manipulations.

The ALJ acknowledged Plaintiff's statement in the 2018 function report that her condition affected her ability to reach and use her hands, and discussed her subsequent testimony that she was unable to work due to, *inter alia*, symptoms of hand and wrist pain and swelling. (R. 29.) Nonetheless, the ALJ found that the medical record indicated Plaintiff's conditions imposed restrictions, but not to the degree alleged. (R. 29.) The ALJ discussed Dr. Strizhak's examination, which was normal except for antalgic gait, and nerve conduction velocity and EMG testing that revealed evidence of medial nerve neuropathy at the wrist. (R. 30.) The ALJ found persuasive other evidence in the record, including Dr. Meisel's consultative examination findings of full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (R. 31.) Notably, neither Dr. Meisel nor the state agency medical consultant, Dr. Vinluan, assessed any manipulative limitations.[16] (R. 100-01, 114, 785-88.) The ALJ also

---

[15] To the extent Plaintiff relies upon Dr. Simo's opinion from November 2021, the Court agrees with the Commissioner that this opinion does not relate to the period prior to December 26, 2019. (*See* Comm'r Br. at 16-17.)

[16] Plaintiff does not challenge the ALJ's assessment of the medical opinion evidence. However, Plaintiff asserts that the lack of manipulative limitations in the respective opinions suggests that neither doctor considered manipulative limitations. (Pl.'s Reply Mem., ECF No. 18, at 2.) To the contrary, Dr. Vinluan's RFC assessment specifically states his opinion that Plaintiff had no manipulative limitations. (R. 100-01, 114.) Moreover, it is clear from Dr. Meisel's opinion that he considered evidence of Plaintiff's carpal tunnel syndrome and his physical examination documented relevant findings such as negative Tinel's and negative Phalen's signs bilaterally, and that her "[h]and and finger dexterity [was] intact" with a 5/5 grip strength bilaterally. (R. 785, 787.) Thus, it was appropriate for the ALJ to rely on the lack of manipulative limitations in Dr. Meisel's opinions to conclude that Dr. Meisel found no such limitations. *See Joseph Alex T. v. Comm'r of Soc. Sec.*, No. 21-CV-00801 (JMF) (GRJ), 2022 WL 3160716, at *4 (S.D.N.Y. June 27, 2022), *report and recommendation adopted sub nom. Tashman v. Kijakazi*, 2022 WL 3159318 (S.D.N.Y. Aug. 8,

discussed Plaintiff's testimony that she could perform most of her activities of daily living independently. (R. 32, 34.) Thus, the Court agrees with the Commissioner that the ALJ's RFC determination is supported by substantial evidence. *See Waldvogel v. Comm'r of Soc. Sec.*, No. 6:16-CV-00868 (GTS), 2017 WL 3995590, at *6 (N.D.N.Y. Sept. 11, 2017) (substantial evidence, including normal grip strength, grossly intact sensation, 4.5/5 strength in her upper and lower extremities and intact hand and finger dexterity, supported ALJ's finding that plaintiff retained ability to frequently finger and feel despite some evidence of carpal tunnel symptoms); *Johnson v. Berryhill*, No. 3:16-CV-01050 (SRU), 2017 WL 2381272, at *6 (D. Conn. June 1, 2017) (ALJ rationally compared opinions to reach conclusion regarding plaintiff's manipulative limitations); *Ronald B. v. Comm'r of Soc. Sec.*, No. 20-CV-00904 (WBC), 2021 WL 5745673, at *6 (W.D.N.Y. Dec. 2, 2021) (RFC determination limiting plaintiff to frequent handling and fingering supported by substantial evidence including consultative examinations showing intact hand and finger dexterity and grip strength). Although Plaintiff contends that the evidence supports even greater limitations prior to December 26, 2019, she has not shown "that no reasonable factfinder could have reached the same conclusion [as the ALJ]." *Schillo v. Kijakazi*, 31 F.4th 62, 78 (2d Cir. 2022), *as amended* (Apr. 6, 2022); *see also Capezza*, 2024 WL 642961, at *10 ("the issue for the Court is not whether substantial evidence supports [p]laintiff's position, but 'whether substantial evidence supports the ALJ's decision.'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)).

---

2022) (fact that consultative examiner assessed limitations in some areas, "but not with respect to fine motor activities, [could] be relied upon as evidence that [consultative examiner] assessed no limitation as to such activities"); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (ALJ "entitled to rely not only on what the record says, but also on what it does not say") (citation omitted)).

Moreover, there is no merit to Plaintiff's argument that the ALJ failed to adequately discuss her carpal tunnel syndrome or her ability to perform fine and gross hand manipulations. (Pl.'s Mem. at 17.) "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.2 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (1983)). It is clear from the ALJ's thorough discussion of the relevant treatment evidence and inclusion in the RFC of manipulative limitations that she adequately considered Plaintiff's carpal tunnel syndrome and other impairments regarding the use of her hands. *See Maria S. v. Kijakazi,* No. 3:21-CV-00177 (DEP), 2022 WL 4619861, at *5 n.7 (N.D.N.Y. Sept. 30, 2022) (ALJ provided accurate discussion of medical evidence related to plaintiff's carpal tunnel syndrome which allowed "reviewer to glean her rationale for . . . her ultimate findings regarding the manipulative limitations in the RFC"); *Janelle J. v. Comm'r of Soc. Sec.*, No. 21-CV-00528 (DB), 2024 WL 113072, at *11 (W.D.N.Y. Jan. 10, 2024) (evidence of record supported RFC determination and ALJ's rationale "appropriate even if the reason for not finding every alleged limitation persuasive is not explicitly discussed").[17]

Finally, Plaintiff contends that the ALJ posed a hypothetical to the VE that "generally conformed to her flawed RFC determination, and which did not include [Plaintiff's] hand

---

[17] In contrast, in the cases relied upon by Plaintiff (*see* Pl.'s Mem. at 17), the ALJs did not consider all the relevant evidence after finding the plaintiff's carpal tunnel syndrome to be non-severe. *See Linval v. Comm'r of Soc. Sec.*, No. 22-CV-03262 (JCM), 2023 WL 6121703, at *11 (S.D.N.Y. Sept. 19, 2023) (ALJ "only expressly consider[ed] the evidence supportive of the ALJ's conclusion that [the plaintiff's] carpal tunnel syndrome was a non-severe impairment," but did not consider "any consideration of the contrary evidence, which post-date[d] [the plaintiff's] carpal tunnel syndrome diagnosis."); *Bedasie v. Comm'r of Soc. Sec.*, No. 20-CV-04094 (MKB), 2022 WL 4326122, at *11 (E.D.N.Y. Sept. 17, 2022) (listing evidence ALJ failed to consider in assessing the plaintiff's carpal tunnel syndrome).

limitations." (Pl.'s Mem. at 17-18.) "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (discussing step five hypothetical) (citations omitted) (cleaned up). Because I find that the ALJ's RFC determination is supported by substantial evidence, there is no merit to Plaintiff's claim that the ALJ's hypothetical to the VE reflecting her RFC analysis were inadequate to support the ALJ's conclusion that Plaintiff could return to her past work. *See Cheryl E. v. Comm'r of Soc. Sec.*, No. 20-CV-00867 (ML), 2021 WL 5964890, at *9 (N.D.N.Y. Dec. 15, 2021) (ALJ could properly conclude that plaintiff could return to past work and therefore was not disabled).

## CONCLUSION

For the reasons set forth above, Plaintiff's motion (ECF No. 14) is DENIED and the decision of the Commissioner is AFFIRMED. *See* 42 U.S.C. § 405(g). The Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

Dated:   New York, New York
         April 26, 2024

_____
STEWART D. AARON
United States Magistrate Judge